# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs May 21, 2002

## STATE OF TENNESSEE v. RUFUS E. NEELEY

### Direct Appeal from the Criminal Court for Sullivan County
### No. S44,445     R. Jerry Beck, Judge

### No. E2001-02243-CCA-R3-CD
### October 11, 2002

Defendant, Rufus E. Neeley, was convicted of the following offenses following a jury trial: (1) unlawful possession of a prohibited weapon, to wit: a short-barreled shotgun, a Class E felony; (2) possession of a knife with a blade length exceeding four inches with intent to go armed, a Class C misdemeanor; (3) driving on a revoked driver's license, a Class B misdemeanor; and (4) operating a motor vehicle while possessing an open container of beer, a Class C misdemeanor. Defendant was sentenced to serve three years and six months as a Range II multiple offender for the felony offense, thirty days for each Class C misdemeanor, and six months for the Class B misdemeanor. All sentences were ordered to be served concurrently with each other. He was ordered to serve the felony sentence in the Department of Correction. Defendant has appealed, challenging the sufficiency of the evidence to support the convictions for unlawful possession of a prohibited weapon and possession of a knife with intent to go armed, and argues that he should have been sentenced to split-confinement rather than total incarceration. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**.

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Julie A. Rice, Knoxville, Tennessee (on appeal) and Stephen M. Wallace, District Public Defender; and Terry L. Jordan, Assistant Public Defender, Blountville, Tennessee (at trial) for the appellant, Rufus E. Neeley.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Joseph Eugene Perrin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Janie Lou Smith testified that she had known Defendant for approximately twenty-five years, meeting him through her friend, Linda Penley, who is Defendant's sister. Smith had never been romantically involved with Defendant, but he had wanted to have a romantic relationship with her. She had seen Defendant, off and on, two or three times per month during the summer of 2000, while at a Clinch River cabin on weekends. During the summer of 2000, Defendant told Smith that he wanted to marry her. He did not take her rejection very well, and got mad and drank heavily. On September 20, 2000, Smith went to the Sullivan County Sheriff's Department and spoke with Captain Johnny Murray.

In the days just prior to Smith speaking with Captain Murray, Defendant had called Smith several times. Defendant told her that nobody would have her except him and that he would kidnap her if he had to. Smith testified that she was terrified. She told Captain Murray her address in Sullivan County and gave him a description of Defendant and the vehicle he drove. The following day, on September 21, 2000, Defendant call Smith again, wanting to meet with her "about their relationship." Smith stated that Defendant was intoxicated, abusive, and aggressive. After finishing her conversation with Defendant, she called Captain Murray. He advised her to call Defendant back and tell him to come over to her house.

Captain Murray testified that in September 2000, he was the patrol watch commander for the Sullivan County Sheriff's Department. After receiving the telephone call from Ms. Smith on September 21, he set up surveillance near Ms. Smith's home at 1:00 p.m. He later observed Defendant drive his vehicle into her driveway. Officer Murray then pulled into the driveway behind Defendant. He got out of the vehicle and approached Defendant, who was leaning down with his hands in the floorboard area. Murray ordered Defendant to show his hands several times. Finally, Defendant showed his hands. In one hand, he had a pack of cigarettes and in the other, a wrench. Murray determined that Defendant's driver's license had been revoked and he was handcuffed and placed into the officer's vehicle. Captain Murray found a large-bladed knife on the floor of Defendant's vehicle where Defendant's feet had been. The knife was directly in front of the driver's seat. Murray testified that the blade of the knife was nine and one-half inches long. Inside the vehicle, he also found a twelve ounce beer can which was approximately three-fourths full and cool to the touch. Defendant was the only person in the vehicle.

Captain Murray further observed the grip of a shotgun between the driver's seat and the "hump" of the floorboard separating the bucket seats in Defendant's vehicle. He pulled it out and it was the cut off stock of a shotgun. In a bag partially on the backseat of Defendant's car, with one end of the bag between the front bucket seats, Captain Murray found the remaining portion of the short-barreled shotgun and four shotgun shells. The barrel of the shotgun was thirteen and one-quarter inches long. Without the handle, the overall length of the shotgun was seventeen inches. Defendant stated to Captain Murray that he did not know anything about the gun and that Ms. Smith had given him the knife.

Captain Murray testified that the shotgun was test-fired by an Alcohol, Tobacco and Firearms agent. The test-firing was done with a shotgun shell which contained no pellets, but did have a primer cap on it, to make sure that the shotgun was operational. The gun exploded the cap and, therefore, it was operational. Captain Murray further testified that he did not fire a shell with pellets in it because, although the shotgun was operational and the metal was in good shape, he would not "feel safe" shooting the weapon with a shotgun shell loaded with pellets.

On behalf of Defendant, Gary Stacy testified that he was Defendant's brother and that he lived in Clinch River, Virginia in a cabin and was married to Joan Stacy. Gary Stacy testified that he saw Ms. Smith almost every weekend during the summer of 2000 at his brother-in-law's cabin, which is located approximately 200 feet from the Stacy residence. He also saw Defendant at the same cabin where Ms. Smith was staying. He observed Defendant and Ms. Smith on one occasion with the knife, and he heard Ms. Smith state that the knife was her son's knife. He further testified that Defendant lived with different relatives, back and forth, and sometimes stayed in his vehicle while getting to "jobs."

Joan Stacy, Gary Stacy's wife, and the Defendant's sister-in-law, testified that on September 21, 2000, Ms. Smith called her home where the speaker phone was turned on. She stated that she could overhear the conversation between Defendant and Ms. Smith. Ms. Smith wanted Defendant to come over to her house. Ms. Smith advised Defendant that she loved him, but needed to talk to him. She saw Ms. Smith almost every weekend of the summer of 2000. She acknowledged that Ms. Smith never mentioned the gun or the knife when she called Defendant on September 21, 2000.

In rebuttal, Ms. Smith testified that she had only had one child, a daughter, who died shortly after birth twenty-six years prior to trial. She did not have a son.

## ANALYSIS

### I. Sufficiency of the Evidence

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable

and legitimate inferences which may be drawn from the evidence.  State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence. Id.  In State v. Grace, the Tennessee Supreme Court stated, "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."  493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact.  State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

## A.  Unlawful Possession of a Prohibited Weapon

Defendant questions the sufficiency of the evidence used to convict him of possessing a prohibited weapon, to wit: a short-barreled shotgun, on three grounds: (1) he states that since the weapon was in more than one piece, it was no longer a shotgun; (2) Defendant argues that because Captain Murray testified that he felt the gun was unsafe to fire a totally "live" round, it could no longer be considered a shotgun; and (3) Defendant argues that since the stock or handle of the gun was missing, it could no longer be fired "from the shoulder" and therefore did not meet the statutory definition of a shotgun.

Tennessee Code Annotated section 39-17-1302(a)(4) states that it is a Class E felony when a person "intentionally or knowingly possesses, manufacturers, transports, repairs or sells" a short-barrel shotgun.

Tennessee Code Annotated section 39-17-1301(11) defines "short-barrel" as a barrel length of less than eighteen (18) inches for a shotgun, or an overall firearm length of less than twenty-six (26) inches.  Tennessee Code Annotated section 39-17-1301(12) defines a shotgun as "any firearm designed, made, or adapted to be fired from the shoulder and to use the energy of the explosive in a fixed shotgun shell to fire through a smooth-bore barrel either a number of ball shot or single projectile by a single function of the trigger."  (emphasis added.)

There is no requirement in the statutes that the firearm be "safe" in order for it to be a violation of the statute which criminalizes possession, manufacture, transportation, repair, or selling the prohibited firearm.  The jury could clearly infer from the proof that the stock of the shotgun, which had been sawed-off, fit the remaining portion of the shotgun found in the bag. Obviously, the jury could then infer that the shotgun was originally designed to be "shot from the shoulder."  The fact that the weapon was in more than one piece, but was fully functional to fire a shotgun shell, does not require a conclusion that the shotgun, being in "more than one piece" was therefore no longer a "shotgun."

The uncontradicted testimony was that the barrel of the shotgun was thirteen and one-quarter (13 1/4) inches long and that the total length of the shotgun, without the sawed-off handle, was seventeen (17) inches long. The firearm was operational. Clearly, the State proved beyond a reasonable doubt Defendant's guilt of the offense of unlawful possession of a prohibited weapon, to wit: a short-barreled shotgun. Defendant is not entitled to relief on this issue.

## B. Possession of a Knife with Intent to go Armed.

Tennessee Code Annotated section 39-17-1307 provides that a person commits a Class C misdemeanor, if he carries, with the intent to go armed, a knife with a blade length exceeding four (4) inches.

Regarding the conviction for unlawful possession of the knife with intent to go armed, Defendant argues that the State did not prove that the Defendant possessed the knife with the intent to go armed. Defendant argues that based upon testimony that his vehicle was cluttered, in poor condition, and contained food, pots and pans, clothing, toiletries, and trash, the proof shows that he used the vehicle for storage or lived in his vehicle. Drawing an analogy that possessing a knife in a closet in an established residence would not constitute possessing the knife with "intent to go armed," Defendant argues that the State failed to prove that the knife was in the vehicle "with the intent to go armed."

However, there was testimony that Defendant had recently stated to Ms. Smith that he would kidnap and take her away if necessary. When the officer arrived, Defendant's hands were on the floorboard near where the knife was found. The jury could readily infer that Defendant was armed with the knife in order to carry out his threats against Ms. Smith. Defendant's argument is based entirely upon the weight of the evidence, and the jury obviously chose to reject Defendant's theory. Defendant is not entitled to relief on this issue.

## II. Sentencing

This court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-544 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210, to consider the following factors in sentencing:

(1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

Under the Criminal Sentencing Reform Act of 1989, trial judges are encouraged to use alternatives to incarceration. An especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6).

In determining if incarceration is appropriate, a trial court may consider the need to protect society by restraining a defendant having a long history of criminal conduct, the need to avoid depreciating the seriousness of the offense, whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses, and whether less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1); see also State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

A court may also consider the mitigating and enhancing factors set forth in Tennessee Code Annotated sections 40-35-113 and -114 as they are relevant to the § 40-35-103 considerations. Tenn. Code Ann. § 40-35-210(b)(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Additionally, a court should consider the defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); Boston, 938 S.W.2d at 438.

There is no mathematical equation to be utilized in determining sentencing alternatives. Not only should the sentence fit the offense, but it should fit the offender as well. Tenn. Code Ann. § 40-35-103(2); State v. Batey, 35 S.W.3d 585, 588-89 (Tenn. Crim. App. 2000). Indeed, individualized punishment is the essence of alternative sentencing. State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). In summary, sentencing must be determined on a case-by-case basis, tailoring each sentence to that particular defendant based upon the facts of that case and the circumstances of that defendant. State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986).

The proof at the sentencing hearing established that Defendant should be sentenced as a Range II multiple offender for the felony conviction of unlawful possession of a prohibited weapon. At the time of sentencing, Defendant was fifty-two years old. His prior criminal record included convictions for DUI (one on October 2, 1990, with another arrest for DUI on October 25, 1990 which resulted in another conviction), driving on a revoked license in 1990, evading arrest in 1990, DUI in Florida in 1981, and "offer to commit prostitution" in 1988 in Florida. In addition, the proof showed that Defendant has two prior felony convictions in Florida for the felony offense of "Lewd Act Upon a Child" in 1995. Furthermore, Defendant was convicted in Florida in 1986 for the felony offense of "Lewd and Lascivious Assault Upon a Child." The record further reflects that his parole

was twice revoked for the Florida felony convictions, and that he was on parole at the time he committed the offenses which are the subject of this appeal. Defendant had obtained his GED, had been regularly employed, and had been honorably discharged from the armed services after serving in a combat unit in Vietnam.

The trial court found the following enhancement factors from Tennessee Code Annotated section 40-35-114 to be applicable:

(1)     The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range.

(8)     The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community.

(13)     The felony was committed while defendant was on parole from a prior felony conviction.

The trial court enhanced the sentence from two years to four years as a Range II multiple offender based upon the enhancement factors. In addition, the trial court found as mitigating factors, as stated above, that Defendant had a GED, a successful work record, and an honorable military record, and based upon those mitigating factors, reduced the sentence by six months for a total sentence of three years and six months as a Range II multiple offender.

Defendant argues that the proof did not overcome the presumption for the appropriateness of an alternative sentence of split-confinement. As a Range II offender, however, Defendant is not entitled to the presumption that an alternative sentence is appropriate. See Tenn. Code Ann. § 40-35-102(6). Defendant further argues that his prior criminal history is "not truly lengthy" and should not be used to deny alternative sentencing. Defendant's prior criminal record consists of three felonies and several misdemeanors, which occurred from 1981 through 1995. We disagree with Defendant's assertion that his criminal history was "not truly lengthy."

Finally, Defendant argues that since he disputed the validity of the Florida Parole Commission's authority to revoke his parole (Defendant testified that he had "flattened out" his sentence and should not have been on parole), that enhancement factor (13) should not apply to deny alternative sentencing. The trial court made a factual determination that Defendant had previously been on parole, and that the parole had been revoked. We will not set aside this finding of fact.

Based on our review of the record, the trial court properly concluded that Defendant's lengthy criminal history, spanning several years, and the fact that measures less restrictive than total confinement had been unsuccessfully applied to Defendant, warranted total confinement in the Department of Correction for the conviction of unlawful possession of a prohibited weapon. Defendant is not entitled to relief on this issue.

-7-

## CONCLUSION

For the foregoing reasons, the judgements of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE